**GOVERNMENT OF the VIRGIN ISLANDS, Appellee,**

v.

**Ernesto VENTURA, Appellant.**

**No. 84–3666.**

United States Court of Appeals, Third Circuit.

Argued April 22, 1985.

Decided Oct. 17, 1985.

---

ping for ransom, extortion, or robbery with a mandatory sentence of life imprisonment. Because the crime of kidnapping carries such severe penalties, the court held that statutes proscribing asportation incident to other crimes should be narrowly construed. We therefore stated that, in the absence of legislative intent to the contrary, asportation or detention incident to another crime does not constitute kidnapping unless it has certain indicia of severity and of discreteness from the other offense. The *Berry* panel formulated a four-factor test for determining whether a kidnapping has occurred, focusing on the duration of the asportation, how much danger it imposed on the victim, whether it occurred at a different time than the other offense, and whether it was inherent in the other offense.

Since our decision in *Berry*, the Virgin Islands legislature enacted V.I. Code Ann. tit. 14, § 1052(b), which specifically proscribes abduction with the intent to commit rape and defines such abduction as kidnapping. Rape was not a predicate offense under the predecessor statute. This appeal by Ernesto Ventura, from his conviction in the District Court of the Virgin Islands on charges of rape, requires us to determine whether he was properly convicted of kidnapping with intent to commit rape, notwithstanding the brevity in both time and distance of the asportation of his victim. In making this determination, we must decide whether § 1052(b), which carries with it a mandatory minimum penalty of fifteen years, is to be construed according to the *Berry* test or is subject to a less demanding analysis.

For the reasons that follow, we conclude that a modified *Berry* analysis applied to § 1052(b). Our study of the relevant legislative history leads us to conclude that the timing of the asportation relative to the rape, and whether the asportation is an integral part of the rape, are irrelevant to prosecutions under the statute, but that the duration and danger requirements are applicable though they need not be stringently applied. Because we decide that the

James W. Diehm, U.S. Atty., Leonard Birdsong (argued), Genevieve Holm, Asst. U.S. Attys., Christiansted, St. Croix V.I., for appellee.

Thomas Alkon (argued), Christiansted, St. Croix V.I., for appellant.

Before ADAMS, GARTH, and EDWARD R. BECKER, Circuit Judges.

## OPINION OF THE COURT

· EDWARD R. BECKER, Circuit Judge.

In *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir.1979), this court construed the Virgin Islands statute that punishes those who commit kidnap-

evidence against appellant satisfies this standard, we affirm the kidnapping conviction.

### I.

The evidence adduced at trial establishes the following facts. On May 21, 1984, Mary Lou Rivera, a fourteen-year-old girl with an I.Q. of 63, went after school to the house of appellant, Ernesto Ventura, to meet her mother, who was coming to baby-sit for appellant's wife, Jovita. Mary Lou stayed inside the Ventura house with Jovita until her mother arrived, and then went outside to play with her two younger sisters. The girls played near the houses of two neighbors of the Venturas, Justina Vega (known as "Justo") and Claudino Martinez. The houses are widely spaced: Martinez's house is eighty-eight feet north of Justo's and two hundred fifty-one feet northeast of the Venturas'. Between Justo's house and Claudino's house is an open fireplace where Justo does his cooking; this area is referred to as "Justo's kitchen." The area around the houses is overgrown with brush and trees.

Mary Lou and her sisters were playing in Justo's kitchen when one of the younger girls fell and hurt her knee. While her sisters were tending the injury and Mary Lou was left alone at the kitchen, appellant arrived carrying a rifle on his shoulder. He grabbed Mary Lou by her right ear, whispered that he wanted to have sexual intercourse with her, and pulled her through the bushes into Claudino's house. There he raped and sodomized her and threatened to kill her if she told anyone what had happened.

By a five-count information filed June 12, 1984, the Government of the Virgin Islands charged appellant with kidnapping with intent to commit rape, V.I.Code Ann. tit. 14, § 1052(b), two counts of rape in the first degree, V.I.Code Ann. tit. 14, § 1701(2) and (3), assault with intent to commit rape, V.I.Code Ann. tit. 14, § 295(3), and sodomy, V.I.Code Ann. 14, § 2061(1). On August 8, 1984, a jury returned a verdict of guilty on all counts. After denying appellant's motion for new trial, the district court sentenced appellant to concurrent sentences of eighteen years on each count. Appellant appeals his conviction for kidnapping with intent to rape under V.I.Code Ann. tit. 14, § 1052(b), which carries a mandatory minimum sentence of fifteen years and forbids the granting of parole until one-half of the sentence imposed has been served. He does not appeal his conviction on any of the other counts.

### II.

In *Berry*, we considered a conviction under the aggravated kidnapping statute, V.I. Code Ann. tit. 14, § 1052 (1978) (now V.I. Code Ann. Tit. 14, § 1052(a)), which proscribes kidnapping for ransom, extortion or robbery.[1] The appellants, Berry and Brignoni, were convicted of robbery in the third degree, as well as of kidnapping. Besides robbing their victim, Morales, of his clothes and money, the appellants had driven him to a beach, where they forced him at gunpoint to strip and take a swim before abandoning him there.[2] On the robbery count,

---

1. V.I.Code Ann. tit. 14, § 1052(a) provides:

   Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps, or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from any person or entity any money or valuable thing, or any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of kidnapping for ransom and shall be imprisoned for life.

2. Berry and Brignoni had picked up Morales, who owed them money, and driven him to his brother's bar so that he could ask for a loan to make the repayment. When the brother was unable to provide enough money to cover the debt, the appellants drove Morales to the beach. After a while, Berry told Morales to get out of the water and ordered him, under threat of death, to deliver the money the next day. Berry and Brignoni then left in the car, telling Morales that he would find his clothes in the middle of the road as he walked home. When Morales found the clothes, his wallet, which contained $50, was missing.

they each received sentences of ten years; the kidnapping conviction, however, carried a mandatory life sentence.

Although Morales' brief trip to the beach and confinement there fell within the literal meaning of the kidnapping statute, this court refused to end its inquiry there. Noting that § 1052, like many aggravated kidnapping statutes, carries a mandatory sentence of life imprisonment, we looked to legislative intent to determine whether every act that comes within the literal language of the statute constitutes kidnapping. Invoking the rule of statutory interpretation that requires that all laws receive a sensible construction,[3] we followed the modern approach to kidnapping statutes, which limits their scope.[4] In doing so, we recognized that the "principal danger of overzealous enforcement of kidnapping statutes is that persons who have committed such substantive crimes as robbery or assault—which inherently involve the temporary detention or seizure of the victim—will suffer the far greater penalties pre-

scribed by the kidnapping statutes." 604 F.2d at 226.

After reviewing the tests used by various states to determine whether a kidnapping has taken place,[5] we set forth what we believed to be the four factors central to each of these approaches. Those factors are:

(1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

604 F.2d at 227. We held that in the absence of any legislative history to the contrary, the question whether a kidnapping has occurred under § 1052 must be determined in light of these four considerations.

**3.** This principle was first announced more than a century ago in *United States v. Kirby,* 74 U.S. (7 Wall.) 482, 486–87, 19 L.Ed. 278 (1868):

All laws should receive a sensible construction. General terms should be so limited as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.

**4.** *See, e.g., People v. Caudillo,* 21 Cal.3d 562, 146 Cal.Rptr. 859, 580 P.2d 274 (1978); *Cuevas v. State,* 338 So.2d 1236 (Miss.1976); *State v. Johnson,* 549 S.W.2d 627 (Mo.Ct.App.1977); *Wright v. State,* 94 Neb. 415, 581 P.2d 442 (1978); *People v. Miles,* 23 N.Y.2d 527, 297 N.Y.S.2d 913, 245 N.E.2d 688 (1969). *See also* Model Penal Code § 212.1. Comments (Tent. Draft No. 11, 1960):

[I]t is desirable to restrict the scope of kidnapping, as an alternative or cumulative treatment of behavior whose chief significance is robbery or rape, because the broad scope of this overlapping offense has given rise to serious injustice.... Examples of abusive prosecution for kidnapping are common. Among the worst is the use of this means to secure a death sentence or life imprisonment for behavior that amounts in substance to robbery or rape, in a jurisdiction where these offenses are not subject to such penalties.

The modern approach contrasts with the traditional American rule, under which any asportation—*i.e.,* carrying away—of the victim no matter how short in distance or duration, was sufficient to constitute criminal kidnapping. *See, e.g., Levshakoff v. State,* 565 P.2d 504 (Alaska 1977); *State v. Padilla,* 106 Ariz. 230, 474 P.2d 821 (1970); *Johnson v. State,* 262 Ind. 516, 319 N.E.2d 126 (1975); *People v. Chessman,* 38 Cal.2d 166, 238 P.2d 1001 (1952); *rev'd in People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969). *See also* Note, *A Rationale of the Law of Kidnapping,* 53 Col.L.Rev. 540 (1953). *See generally* 43 A.L.R.3d 399 (1972 & Supp.1978).

**5.** *See, e.g., People v. Timmons,* 4 Cal.3d 411, 415, 93 Cal.Rptr. 736, 739, 482 P.2d 648, 651 (1971) (asportation or detention during the commission of another crime constitutes kidnapping only when it "significantly increases the dangerousness or undesirability of the defendant's behavior"); *People v. Daniels,* 71 Cal.2d 1119, 1139, 80 Cal.Rptr. 897, 910, 459 P.2d 225, 238 (1969) (kidnapping does not occur when asportation is merely "incidental to" the commission of other substantive crimes); *People v. Miles,* 23 N.Y.2d 527, 539, 297 N.Y.S.2d 913, 922, 245 N.E.2d 688, 694 (1969) (adopting a "merger" doctrine, which bars conviction for kidnapping when the underlying crime "could not be committed in the form planned without the limited asportations" inherent in the crime).

*Id.* Applying our analysis to the situation in *Berry,* we concluded that no kidnapping, separable and distinct from the robbery, had occurred.[6] We therefore reversed the appellants' conviction for kidnapping.

### III.

The appellant argues that dragging Mary Lou from Justo's kitchen to Claudino's house does not constitute kidnapping under the *Berry* standard. Specifically, he contends that neither the distance he dragged Mary Lou, nor the amount of time he detained her, was sufficient to constitute a separate crime of kidnapping, and that his detaining and moving Mary Lou was merely incidental to the crime of rape.

In 1983, the Virgin Islands legislature amended V.I.Code § 1052, denoting the existing provision as § 1052(a) and adding a new subsection (b), which provides:

> Whoever abducts, takes or carries away any person by force or threat with the intent to commit rape is guilty of kidnapping and shall be imprisoned for not less than 15 years and shall not be eligible for parole until he has served at least one-half of sentence imposed.

V.I.Code Ann. tit. 14, § 1052(b). The government argues that the new provision makes analysis of the second and third factors of the *Berry* test—whether the asportation occurred during the commission of another offense, and whether asportation is an inherent part of the separate offense—unnecessary when the asportation is incidental to a rape. According to the government, only the first and fourth factors—duration and danger—are relevant to § 1052(b) and those factors are satisfied here. Appellant contends that the new enactment is subject to the *Berry* holding: he argues that § 1052(b) is to be applied according to the same rule of construction employed in interpreting § 1052(a).

■ Our analysis of § 1052(b)'s legislative history, its explicit provisions, and its place among the other criminal laws of the Virgin Islands leads us to accept the government's argument. The legislative history provided to us by the Office of the Legislative Counsel of the Legislature of the Virgin Islands reveals that § 1052(b) was adopted in order to increase the severity of the punishment for rapists who carry off their victims: the legislature wished to ensure that the asportation would be prosecuted as a separate crime of kidnapping. As we read the history, the legislature was not concerned, as was the *Berry* court, about the risk of overzealous application of the kidnapping charge to impose a sentence substantially greater than that attached to the underlying crime. On the contrary, the legislature directed that a separate kidnapping charge be brought against certain rapists in order to increase the penalty imposed upon them.[7] This express legislative

---

6. We determined that Morales' confinement on the beach occurred during the commission of the robbery and was no greater in degree than the confinement inherent in the crime of robbery. *Id.* The forced swim on the beach did not fit with the precise meaning of the statutory language, which we construed narrowly because of the mandatory life sentence: in compelling Morales to swim, the appellants did not "seize," "confine," "abduct," "carry away," "inveigle," "entice," "decoy," or "conceal" him. Nor was the ride to the beach sufficient to support a kidnapping conviction because it was brief in duration and created no appreciable risk of injury to Morales.

7. In the Committee on Rules and Nominations, Senator Mapp stated:

> What this basically does is we had some of our young females and older females snach

[sic] off of the street, out of a home, and placed of entertainment, and carried into the less populated areas of the island and brutally raped and left there half nude. This would be a mechanism to deal with that problem and to create minimum mandatory penalty because prosecutors sometimes tend not to deal with the issues of kidnapping when they deal with the issues of rape. They simply look at kidnapping as part of the overall aspect or [sic] the act of rape. And we are attempting not to make that separation to help to curve [sic] rapes in the community.

Senator Harvey of the Committee on Rules and Nominations also viewed the amendment as increasing the punishment for rapes that included asportation of the victim. According to Senator Harvey, when a rapist moves a person "from one place to another, then commits rape, [§ 1052(b)] adds another charge.... So the person would in fact not only face the charge of

intent to increase rapists' sentences contrasts sharply with the absence of such an expression of legislative purpose behind § 1052(a), which was analyzed in *Berry.*

Before the adoption of § 1052(b), a rapist's asportation of his victim, no matter how far, was an aspect of the overall offense (the rape). By passing § 1052(b), the legislature intended to assure that asportation incident to rape would be punished as the separate crime of kidnapping. Section 1052(b) was itself, therefore, a resolution of the second and third factors of the *Berry* test in the case of asportation incident to rape. By creating a crime of kidnapping with intent to commit rape, the legislature rendered immaterial an inquiry into whether the asportation occurred during the commission of the rape or whether the asportation that occurred was inherent in the rape. The legislature has thus determined that the separateness of the asportation and rape is irrelevant.

Further evidence of the inapplicability of the full *Berry* test is supplied by the sentencing provisions of § 1052(b). As mentioned above, many kidnapping statutes (including § 1052(a), which was at issue in *Berry*) carry mandatory life sentences. The *Berry* Court emphasized that the severity of the sentence dictated caution in the application of the kidnapping statute. *See* 604 F.2d at 228 ("It is beyond dispute that with respect to a statute containing a mandatory life imprisonment term, the statutory language must be narrowly construed.") Section 1052(b), by contrast, carries a mandatory minimum of 15 years. The inclusion of the lesser sentence in 1052(b) supports the argument that the stringent *Berry* test does not apply in full force.

Section 1052(b)'s place among the other criminal laws of the Virgin Islands supports our conclusion. The legislature's adoption of a specific provision dealing with abduction incident to rape, distinct from the general aggravated kidnapping statute, § 1052(a), indicates that the legislature did not view the determination of the criminality of asportation incident to rape as identical to the question whether the asportation would have constituted a kidnapping under the more general provision.[8] To apply the *Berry* factor here would effectively override the will of the Virgin Islands legislature.

Although the second and third steps in the *Berry* test are therefore not applicable under § 1052(b), we believe that the *Berry* rationale is still relevant. Because there was no mention of *Berry* in the legislative history of § 1052(b), it cannot be said that the legislators sought to repudiate *Berry.* Moreover, the fifteen-year minimum sentence, although not so severe as the mandatory lifetime sentence carried by § 1052(a), may be far more severe than the sentence for first degree rape.[9] Therefore the *Berry* concern for avoiding a sentence disproportionately larger than the underlying crime would appear to apply to § 1052(b) analysis. We believe that the jurisprudence that counsels caution in construing aggravated kidnapping statutes is still on point. In the absence of a legislative intention to nullify the *Berry* analysis for the purpose of construing § 1052(b) we will not do so, for we cannot assume that any asportation incident to rape, however slight, constitutes kidnapping with intent to com-

---

rape, but also kidnapping with intent to rape. So that instance, it would double the penalty of the offense, if the person moves from one place to another."

**8.** The cases adopting the "modern approach" to kidnapping statutes, upon which we relied in *Berry,* also dealt with general kidnapping statutes. For example, in *Chatwin v. United States,* 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946), the United States Supreme Court stated that the purpose of the Federal Kidnapping Act, 18 U.S.C. § 408a, *as amended* 18 U.S.C. § 1201

(1976), was to combat an epidemic of "true kidnapping," involving carefully worked out plans to hold wealthy victims for ransom. *Id.* at 462–64, 66 S.Ct. at 233–37.

**9.** Section 1052(b) carries a mandatory minimum of fifteen years and a minimum parole eligibility of one-half the time served. Presumably the maximum is life imprisonment. The required sentence for first degree rape is not more than twenty years with no minimum term or parole eligibility rule.

mit rape.[10] We therefore hold that the first and fourth factors of the *Berry* test—duration of detention and danger to the victim over and above the danger posed by the separate offense—are applicable to § 1052(b).[11]

## IV.

■ Applying the first and fourth prongs of the *Berry* analysis to the facts of this case, we conclude that appellant's asportation of Mary Lou was sufficient to justify the kidnapping conviction. Turning first to the duration of the asportation, we note that it took at least a few minutes for appellant to drag Mary Lou through the bushes to Claudino's house. It is true that the duration of appellant's act of dragging Mary Lou through the bushes was not as long as the duration of Morales' ride to the beach in *Berry*. There we found that "[t]his is in sharp contrast to the traditional kidnapping case, in which the victim is held for a substantial period." 604 F.2d at 228. However, it is significant in this regard that appellant transported his victim from the outdoors to the interior of Claudino's house, thus taking her from one environment to another.[12] Moreover, the short duration of the ride in *Berry* was not the only reason for our holding that it was not a kidnapping, for we also found no indication that the brief ride created any appreciable risk of injury to Morales. Where, as here, the element of significant danger independent of the underlying offense (the fourth *Berry* factor) indicates that a kidnapping has occurred, the short duration of the asportation will not prevent us from applying § 1052(b).

By dragging his victim through the bushes by the ear while carrying a gun the appellant created a significant danger to Mary Lou independent of the danger inherent in the rape. Had appellant not raped Mary Lou, he would nonetheless have committed a criminal offense by thus brutally pulling her away from the place where she was playing. Being dragged through the bushes would appear to be particularly terrifying to one like Mary Lou, who was most likely bewildered by what was happening to her, and the danger of psychological harm cannot be discounted.[13] This risk of harm adds support to our conclusion that the fourth *Berry* factor is satisfied, *i.e.*, that the asportation created a signifi-

---

10. Indeed, *Berry* simply suggests that, in applying its principles to new statutes, we exhibit sensitivity to legislative history, which is precisely what we are doing. Thus, in the absence of any statement of an intention to nullify the *Berry* analysis, we cannot assume that any asportation, however slight (such, for example, as pulling the victim from an upright position onto the floor or across a room) constitutes kidnapping with intent to commit rape.

11. We note in further support that the language of § 1052(b) itself calls for a consideration of the duration of the asportation and of whether the asportation created a significant danger to the victim independent of that posed by the rape. The asportation must be more than minimal for the rapist to be said to have "abducted, taken or carried away" his victim; the requirement that the abduction be "by force or threat" introduces the element of danger separate from the rape itself.

Of course, our holding in this case does not disturb the rule of *Berry* itself. We decide that courts should follow a less demanding test than that set forth in *Berry* when applying § 1052(b). However, the *Berry* test is still applicable to the construction of § 1052(a).

12. As we have already stated, the modified *Berry* test used in § 1052(b) cases is not a stringent one. The examples of kidnapping with intent to rape mentioned in the legislative history of § 1052(b) involve transportation over greater distances than Mary Lou was dragged. For example, Senator Lee stated that he knew "several instances when someone was leaving the shopping center at ten of six, and have [sic] been attacked and placed in a strange car, driven to Red Hook or another end of the island, for the purpose of being raped." However, such examples do not mean that the legislature intended that the transportation of a victim over a smaller distance in a shorter period of time, such as the appellant's transportation of Mary Lou, would not constitute kidnapping with intent to rape.

13. We realize that "a kidnapping does not occur merely because the supposed victim thinks that he is being kidnapped," 604 F.2d at 225, n. 5. However, we are not addressing Mary Lou's belief that she was being kidnapped, but rather the likelihood of psychological harm to a young girl created by appellant's action in dragging her off.

cant danger to the victim independent of that posed by the separate offenses of rape and sodomy.

We also note that appellant's asportation of his victim fits within the language of § 1052(b), narrowly construed. By any interpretation of the words, no matter how narrow, appellant "abducted" his victim: he seized her by the ear and pulled her to another place. It could equally well be said that appellant "took or carried away" his victim. Thus, unlike the forced swim in *Berry*, which could have been considered a kidnapping only under an expansive reading of the statutory language, appellant's dragging Mary Lou to Claudino's house is a kidnapping within the ordinary meaning of the language of § 1052(b).

Because appellant's kidnapping conviction passes the requisites of § 1052(b), as informed by the modified *Berry* analysis, the judgment of conviction for kidnapping with intent to commit rape will be affirmed.