GOVERNMENT OF the VIRGIN
ISLANDS, Appellant,

v.

ALMENT, Eitel

No. 86–3495.

United States Court of Appeals,
Third Circuit.

Argued April 28, 1987.

Decided June 9, 1987.

Jim U. Oliver, Jr., Office of U.S. Atty., Christiansted, St. Croix, U.S. Virgin Islands and Sara Criscitelli, U.S. Dept. of Justice, Washington, D.C. (argued), for appellant.

Robert L. Tucker, Federal Public Defender, Melody L. Moss, Asst. Federal Public Defender (argued), Christiansted, St. Croix, U.S. Virgin Islands, for appellee.

Before SEITZ, HIGGINBOTHAM and ROSENN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal by the Virgin Islands Government from the district court's order vacating a jury conviction and its judgment acquitting defendant Eithel[1] Alment of kidnapping with intent to rape.[2] We are presented with the issue whether defendant's actions of grabbing his victim by the neck,[3] forcibly removing her from a lighted interior office to an outdoor corridor, dragging her down a set of stairs, and eventually carrying her into an area of bushes, *see* Joint Appendix ("Jt. App.") at 21–24, approximately seventy feet from the initial assault, constitute kidnapping within the meaning of V.I.Code Ann. tit. 14, § 1052(b) (Supp.1986).[4] In accordance with the two-

1. We note that the parties' briefs and the record reflect defendant's name spelled as "Eithel" rather than "Eitel" as indicated on the docket sheet.

2. Defendant was charged in a two-count information on May 16, 1986, with first degree rape under V.I.Code Ann. tit. 14, § 1701 (Supp.1986) and kidnapping with intent to rape under V.I. Code Ann. tit. 14, § 1052(b) (Supp.1986). At the close of the Government's case, Judge Christian

acquitted defendant of the rape charge. The Government does not appeal the rape acquittal.

3. For convenience, we will henceforth refer to this action as a "lock-hold."

4. V.I.Code Ann. tit. 14, § 1052(b) (Supp.1986) provides:
Whoever abducts, takes or carries away any person by force or threat with the intent to commit rape is guilty of kidnapping and shall

pronged analysis articulated in *Government of the Virgin Islands v. Ventura*, 775 F.2d 92 (3d Cir.1985), we conclude that the defendant's actions constitute a violation of § 1052(b). Because we decide that the Government satisfied its burden of proof, we will reverse the district court's judgment of acquittal and remand to the district court with instructions to reinstate the jury's verdict on the kidnapping charge.

## I.

The evidence viewed in the light most favorable to the Government establishes the following facts. In the early morning hours of March 1, 1986, Jane Doe,[5] a twenty-two-year old security guard, was working alone at Elena Christian Junior High School in St. Croix, Virgin Islands. At approximately 5:15 a.m., the defendant, Eithel Alment, approached Doe in an outside corridor, sat down next to her, and offered her bread and cheese. She declined his offer and went into her lighted interior office. Alment followed Doe inside and refused to leave notwithstanding her several requests for him to do so. Alment thwarted her attempt to call the police by grabbing the phone out of her hand and hanging it up. Doe then left her office. After Alment followed her out, Doe ran back in, locking one of two office doors. Although the record is unclear, Alment somehow re-entered the office through the second door as Doe tried to lock it. A struggle ensued and she struck Alment with a club. He seized the club, grabbed her by the neck and dragged her into the outdoor corridor and down a number of steps while simultaneously choking her. Doe struck her head against the railing as a result of her intense resistance.

After dragging Doe about thirty-one feet, Alment threw her onto the ground and told her that he wanted to have sexual intercourse with her. He then proceeded to lift her skirt and tear the crotch of her underwear. The greater Doe struggled, the harder Alment choked her. He then inserted his finger into her vagina. While holding Doe to the ground, Alment attempted to pull down his pants. Abandoning that effort, defendant lifted her over his shoulder and carried her approximately forty feet further into an area of bushes. When he threw her to the ground, she pushed him off, ran to her office and phoned the police. An emergency room doctor at the local hospital examined Doe later that day and noted that, in addition to her reddened vaginal area, she was bruised and appeared to have been choked.

Doe testified that the asportation lasted almost an hour. *See* Jt.App. at 59.[6] The responding police officer observed that Doe was bruised and scratched and that there was sand and grass in her hair. He also found one of Doe's shoes outside as well as a sack containing bread and cheese. He was unable, however, to locate the assailant at that time. About six weeks later, Doe saw her assailant near a St. Croix grocery store. Accompanied by a police officer, she identified the defendant and he was placed under arrest.

A jury trial commenced on June 23, 1986. At the close of the Government's case,

be imprisoned for not less than 15 years and shall not be eligible for parole until he has served at least one-half of sentence imposed.

5. While all parties in their briefs refer to the victim by her actual name, we do not deem it necessary to the resolution of this appeal to memorialize her name with regard to this tragic experience. Accordingly, we will refer to her as "Jane Doe."

6. There is some discrepancy regarding the actual time period between the initial assault and the call to the police. According to the district court's opinion, the responding police officer testified that he wrote his case report forty-five minutes after the initial assault. *See* Jt.App. at

89. The Government conceded that the entire struggle lasted thirty minutes. *See* Jt.App. at 89. Judge Christian determined that based on "all the facts and surrounding circumstances [Doe's] statement has to be taken with the proverbial grain of salt. The elapsed time may have seemed to her to be 45 minutes to an hour, but her detailing of what occurred reasonably suggests no more than 10 or 15 minutes, the length of time one would suspect to be the duration of sexual intercourse, incident to a rape." Jt.App. at 167. Even if we take Doe's statement as to the duration of the entire struggle with a "proverbial grain of salt," as suggested by Judge Christian, our opinion remains unaffected.

Judge Christian, on his own motion, dismissed the rape count[7] but reserved ruling on defendant's motion to acquit on the kidnapping count pursuant to Fed.R.Crim.P. 29. Following the jury verdict, defendant renewed his Rule 29 motion. At a hearing, Judge Christian granted defendant's motion on two grounds. First, Judge Christian concluded that the evidence supporting defendant's identification as Doe's assailant was insufficient and, second, defendant's conduct did not constitute a separate crime of kidnapping.[8] This appeal followed.

## II.

In *Government of the Virgin Islands v. Ventura*, 775 F.2d 92 (3d Cir.1985), we announced a two-pronged test to determine what constitutes a violation of § 1052(b). There, we determined that both the duration of the asportation and any significant danger to the victim independent of the rape must be considered.[9] 775 F.2d at 98. The facts of *Ventura* are strikingly similar to those in the case before us. There, the defendant was convicted of two counts of first degree rape, assault with intent to commit rape, sodomy, and kidnapping with intent to commit rape. He appealed the kidnapping conviction. The trial evidence established that the victim, a fourteen-year-old girl with an I.Q. of 63, was playing in a neighbor's house when the defendant arrived carrying a rifle on his shoulder. He grabbed the young girl by her right ear, whispered that he wanted to have sexual intercourse with her, and pulled her through the bushes into another neighbor's house, a distance of approximately eighty-eight feet. *Id.* at 94. There the defendant raped and sodomized her and threatened to kill her if she told anyone what had happened.

Applying the first and fourth prongs of the *Berry* analysis, this Court concluded that defendant's asportation of his victim proscribes kidnapping for ransom, extortion, or robbery. The *Berry* panel formulated a four-factor test for determining whether a kidnapping occurred: the duration of the asportation; whether it occurred during the commission of a separate offense; whether it was inherent in the other offense; and whether the asportation created a significant danger to the victim independent of that posed by the separate offense. *See* 604 F.2d at 227.

After an analysis of section 1052(b)'s legislative history, its explicit provisions, and its place among other criminal laws of the Virgin Islands, the *Ventura* panel determined that:

> By passing § 1052(b), the legislature intended to assure that asportation incident to rape would be punished as the separate crime of kidnapping. Section 1052(b) was itself, therefore, a resolution of the second and third factors of the *Berry* test in the case of asportation incident to rape.... The legislature has thus determined that the separateness of the asportation and rape is irrelevant.

*Id.* at 97. We noted that section 1052(b)'s express language calls for a consideration of the asportation's duration and of any significant danger to the victim independent of that posed by the rape. We determined that:

> The asportation must be more than minimal for the rapist to be said to have "abducted, taken or carried away" his victim; the requirement that the abduction be "by force or threat" introduces the element of danger separate from the rape itself.

*Id.* at 98.

---

7. The record is unclear as to the depth of defendant's penetration. Doe testified that defendant forced his finger into her vagina. *See* Jt.App. at 25, 30. The emergency room doctor testified that Doe's vaginal area was reddened. *See* Jt.App. at 115. However, Judge Christian found this evidence insufficient to prove vaginal intercourse as defined by statute. He stated that:

> It matters not that [Ms. Doe] said he put his finger in her vagina ... Dr. DeLeon's [testimony] will not suffice ... [Dr. DeLeon] had to be talking only about the primary genital area, the vulva.... [T]he government will not as long as I sit on this bench ... prove vaginal intercourse without proving beyond a reasonable doubt that the penetration went past the vulva, past both labias and into the vagina.

Jt.App. at 96. Although the rape acquittal is not before us, we do not mean to imply that we adopt or approve of Judge Christian's interpretation of vaginal intercourse.

8. In his memorandum opinion, Judge Christian abandoned the sufficiency of the evidence ground and rested his judgment solely on the kidnapping ground. *Government of Virgin Islands v. Alment*, No. 86–39, mem. op. at 2 (D.V.I. Sept. 11, 1986); *see* Jt.App. at 164.

9. The *Ventura* test is a modification of the analysis articulated by this Court in *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir.1979). In *Berry*, we considered a conviction under the aggravated kidnapping statute, V.I. Code Ann. tit. 14, § 1052(a) (Supp.1986), which

was sufficient to justify the kidnapping conviction. *Id.* at 98. Turning first to the duration, we noted that it took a few minutes for appellant to drag the young girl through the bushes to the neighbor's house. *Id.* The short duration of the asportation, however, did not prevent us from applying the fourth prong of the *Berry* test. We found it significant that defendant transported his victim from the outdoors to the interior of the neighbor's house, thus changing the victim's environment. *Id.* We further determined that:

> By dragging his victim through the bushes by the ear while carrying a gun the appellant created a significant danger to [the victim] independent of the danger inherent in the rape. Had appellant not raped [the young girl] he would nonetheless have committed a criminal offense by thus brutally pulling her away from the place where she was playing.

*Id.* Moreover, we noted that defendant's asportation of the child fit within the narrowly construed language of § 1052(b). "By any interpretation of the words, no matter how narrow, appellant 'abducted' his victim: he seized her by the ear and pulled her to another place. It could equally well be said that appellant 'took or carried away' his victim." *Id.* at 99. Concluding that the defendant's actions satisfied the requirements of § 1052(b), we affirmed the kidnapping conviction. *Id.*

## III.

We adopt the Government's view on appeal that the duration, shift in environment, and resulting danger in the instant case are almost identical to that in *Ventura*. *See* Brief for the Government of the Virgin Islands at 13, 15. We note that

Alment's contentions on appeal merely reflect the district court's opinion. Applying the *Ventura* analysis to the facts of this case, however, we conclude that defendant Alment's asportation of Doe was sufficient to justify the kidnapping conviction. Accordingly, the order and judgment of the district court cannot stand.

The duration of defendant's asportation under *Ventura*'s first prong, lasted, at a minimum, as determined by Judge Christian, fifteen minutes, to a maximum of forty-five minutes to one hour, as testified to by Doe. *See* Jt.App. at 59. Doe was dragged by lock-hold approximately thirty-one feet from her office to an outside corridor. The asportation did not end there, however. After a failed attempt to pull down his pants, Alment lifted Doe over his shoulder and carried her forty-feet further into an area of bushes.[10] Similar to the defendant in *Ventura*, Alment transported his victim from one environment, a lighted interior office, to another, an outside corridor and a dark area of bushes on the school grounds, a distance of approximately seventy feet. *See* Jt.App. at 25–26, 59–60. As the Government persuasively points out, "the detention, seizure, and movement were distinct in function from the acts constituting the rape itself: though defendant could have sexually assaulted Doe in her office he removed her forcibly to another location before attempting sexual intercourse with her. And the detention and carrying off of Doe prolonged her exposure to danger beyond the time necessary to complete the rape itself." Brief for the Government of the Virgin Islands at 13.

Moreover, on these facts, analysis of the element of significant danger independent of the underlying offense under the second prong of *Ventura*, indicates that a kidnap-

---

10. In his memorandum opinion, Judge Christian opined that "[m]oving a victim 'from one place to another' should not be read too literally" and that the distance of defendant's asportation of Doe, "a scant 31 feet," would not suffice under the *Ventura* analysis read in conjunction with the legislative proceedings. Jt.App. at 166. We disagree. The *Ventura* panel, in reviewing the legislative history of section 1052(b), determined that although section 1052(b) was enacted to prevent brutal rapes involving asporta-

tions of great duration and distance, "such examples do not mean that the legislature intended that the transportation of a victim over a smaller distance in a shorter period of time ... would not constitute kidnapping with intent to rape." *Ventura*, 775 F.2d at 98 n. 12. Furthermore, we note that Judge Christian failed to include the subsequent asportation from the corridor to the bushes in his calculation of the total distance. *See* Jt.App. at 25–26, 59–60.

ping occurred. The danger created in this case is much like that in *Ventura*. Defendant committed a separate criminal offense by brutally dragging Doe away from the protected environment of her interior office where she had access to a telephone, to the dark brush outside.[11] Although defendant displayed no weapon, the physical act of forcibly dragging Doe by lock-hold down a number of stairs causing her to bang her head against the railing, and further transporting her over his shoulder to the school grounds, created substantial danger to Doe independent of the attempted rape. The record reflects that Doe was physically harmed as a result of this assault. Doe testified that she hit her head on the railing. In addition, the responding police officer noticed bodily bruises and scratches. The emergency room doctor also observed bruises and concluded that Doe appeared to have been choked.[12] We finally note, in agreement with the Government, that Alment's asportation of his victim falls within the narrow construction of § 1052(b) articulated in *Ventura:* Alment "abducted, took or carried away" Doe "by force or threat with the intent to rape" within the ordinary meaning of § 1052(b)'s language.[13] *See* Brief of the Government of the Virgin Islands at 15.

---

**11.** During trial, Doe testified about the independent danger she experienced during her abduction:

Q What happened next, [Ms. Doe]?
A He grabbed me by my neck.
Q He grabbed you by your neck?
A Yes.
Q And, what sort of way? Could you describe to the ladies and gentlemen of the jury how he grabbed you by your neck?
A Like this [indicates].
Q He had his arm around your neck?

. . . .

A [Yes (nod)].
Q And, then what happened after he grabbed you around the neck?
A He attempted to pull me down further into the corridor.
Q Is this corridor indoors or outdoors?
A Outdoors.
Q And, then what happened after he dragged you down the outdoor corridor?
A He pulled me down the steps.
Q And, were you—were you glad to be going or were you fighting or—

. . . .

THE WITNESS: Okay. He pulled me down the steps and I held on to the railing. And, he took—tried choking me more and I hit my head against the railing. And, he pull me down the steps [and] succeeded in getting me on the ground and from that we continued to struggle.
THE COURT: From there on what?
THE WITNESS: We continued to struggle after he had me on the ground.
THE COURT: Yes.
THE WITNESS: And, my—many times I attempted to get up and he pushed me back down.

. . . .

THE COURT: What else, if anything, happened?
THE WITNESS: All this time, I was down. He was choking me still.

. . . .

Q Did you try to get away?

A Yes, I try to get away a few times.
Q And, what would he do?
A Choke me harder.
Jt.App. at 21–24.

**12.** Judge Christian distinguished the danger created in *Ventura* from this case as follows:

Here we deal with two adults in their early to mid 20's, ... about the same size and approximate weight. Apart from the rape or attempted rape, no significant danger was posed to this female. In fact she was the one armed with a club with which she actually struck her assailant, and when the weapon was taken from her hand the intruder did not seize it or use it on her, or even threaten to use it.

Jt.App. at 167. We do not accept this distinction for two reasons. First, regardless of similar weight and size, Doe's use of the club was in self defense. Moreover, she was unable to defend herself with the club, and in fact, was unarmed once the asportation commenced. Second, we do not believe that an assailant's failure to resort to further violence vitiates a section 1052(b) violation.

**13.** In rejecting the kidnapping verdict returned by the jury, Judge Christian concluded that "[t]he very severity of the penalty militates strongly against considering the asportation in this case...." Jt.App. at 168. At the time of section 1052(b)'s enactment, the maximum punishment for first degree rape was imprisonment for not more than twenty years. Currently, punishment for a section 1052(b) violation is imprisonment for not less than fifteen years, one-half of which must be served before parole eligibility.

The potential severity of the penalty, however, does not alter the *Ventura* analysis. Section 1052(b)'s legislative history supports our view. As the *Ventura* panel stated:

The legislative history ... reveals that § 1052(b) was adopted in order to increase the severity of the punishment for rapists who carry off their victims ... [T]he legislature

In conclusion, we hold that defendant's actions of grabbing Doe by lock-hold from a lighted interior office to an outdoor corridor, dragging her down a set of stairs, and eventually carrying her into a dark area of bushes, approximately seventy feet from the initial assault, constitute kidnapping within the purview of V.I.Code Ann. tit. 14, § 1052(b) (Supp.1986). We will therefore reverse the district court's acquittal judgment and remand to the district court with instructions to reinstate the jury's verdict on the kidnapping charge.

---

was not concerned ... about the risk of overzealous application of the kidnapping charge to impose a sentence substantially greater than that attached to the underlying crime. On the contrary, the legislature directed that a separate kidnapping charge be brought against certain rapists *in order to increase the penalty imposed upon them.* (emphasis added).

*Ventura,* 775 F.2d at 96. Moreover, as the Government points out in its brief, "given Judge

Christian's pronouncement that he will acquit any defendant charged with rape absent 'explicit proof' of a consummated rape, it is not implicitly abusive for the United States Attorney to charge kidnapping with the intent to rape where he believes that the government's proof of the underlying offense ultimately may not satisfy [the court]." Brief for the Government of the Virgin Islands at 17 n. 4. We support this observation.