**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Eneliko Fatu FALEAFINE, Defendant-Appellant.**

**No. 73-1850.**

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1974.

Eneliko Fatu Faleafine, in pro per.

James L. Browning, U. S. Atty., F. Steele Langford, Dennis Michael Nerney, Asst. U. S. Attys., San Francisco, Cal., for plaintiff-appellee.

Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE and SNEED, Circuit Judges.

## OPINION

DUNIWAY, Circuit Judge:

Faleafine appeals from a judgment of conviction under a two-count indictment.

The indictment reads in pertinent part:

"COUNT ONE: (18 U.S.C. § 2113(a), (d))

1. On or about October 13, 1972, . . . defendants herein, did by force and intimidation take from the person and presence of manager Leonel Vargas, at the Union City Branch of the Bank of America, NT & SA . . . money in the sum of $52,-000 belonging to and in the care, custody, control and possession of the aforesaid bank. . . .

2. In the commission of the offense alleged in the preceding paragraph of this Indictment, . . . defendants herein, did assault and did put in jeopardy the life of Leonel Var-

gas, by the use of a dangerous weapon, to wit: handguns."

"COUNT TWO: (18 U.S.C. § 2113(e))

In the commission of the offense alleged in Count One of this Indictment, the particulars of which are incorporated herein by reference as if fully set forth, . . . defendants herein, did force Clarence Baptista, a Loan Officer at said bank, to accompany said defendants to said bank without the consent of said Clarence Baptista."

The jury's verdict is set out in the margin.[1] Faleafine was sentenced to twenty-five years imprisonment under count one and fifty years imprisonment under count two, the sentences to be served consecutively.

In his brief, Faleafine, who is acting pro se, argues that the consecutive sentences imposed amount to cruel and unusual punishment, thus violating the Eighth Amendment to the Constitution: We do not reach this question, however, because another defect in the proceedings, apparent on the face of the record, requires that the judgment be reversed in part.

Section 2113, Title 18 U.S.C., now reads, in pertinent part:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, . . .

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \* \* \* \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or

---

1. "(1) We, the Jury, find ENELIKO FATU FALEAFINE, the defendant at bar guilty of bank robbery;
   (a) We, the Jury, further find the defendant in the commission of the above offense did assault, or put in jeopardy the life of another by the use of a dangerous weapon or device;
   (2) We, the Jury, find the defendant at bar guilty of kidnapping;"

puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct."

The foregoing provisions, in almost identical language, have been in the statute from its inception. We quote the statute, as originally enacted, in the margin.[2] The statute has been repeatedly amended, to bring certain savings and loan associations and credit unions within its coverage and to cover: in subsection (a), the present second paragraph, entering a bank with intent to commit a felony or larceny; in new subsection (b), two degrees of stealing from a bank; in new subsection (c), receiving property taken from a bank. None of these amendments has changed the relationships between the part of subsection (a) and present subsections (d) and (e) that we have quoted above.

■ We are of the opinion that subsection (d) which deals with conduct "in committing . . . any offense defined in subsections (a) and (b)" and subsection (e) insofar as it deals with homicide or kidnaping occurring "in committing any offense defined in this section," each prescribes a more severe punishment for the substantive offense defined elsewhere in section 2113, but does not create a separate offense for which a separate sentence may be imposed. We are impelled to this conclusion by the language of the statute, by the rationale of certain decisions of the Supreme Court, and by the great weight of authority in the courts of appeals.

First, the language of the statute. So far as it is pertinent here, subsection (d) provides: "Whoever, *in committing . . . any offense defined in subsection (a)* . . . assaults any person," etc., "shall be fined not more than $10,000 or imprisoned not more than twenty-five years or both." This increases the subsection (a) penalty from up to $5,000 fine or twenty years, or both. So far as it is pertinent here, subsection (e) provides: "Whoever, *in committing any offense defined in this section* . . . kills any person or forces any person to accompany him without the consent of such person, shall be imprisoned for not less than ten years [i.e., up to and including life, Carter v. Johnston, 9 Cir., 1944, 145 F. 2d 882.] or punished by death. . . ." This, too, increases the subsection (a) penalty and also if subsection (d) is involved, the subsec-

2. Act of May 18, 1934, ch. 304, 48 Stat. 783: (Section 1 defines "bank.")

"Sec. 2. (a) Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever, in committing, or in attempting to commit, any offense defined in subsection (a) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous·weapon or device, shall be fined not less than $1,000 nor more than $10,000 or imprisoned not less than five years nor more than twenty-five years, or both.

Sec. 3. Whoever, in committing any offense defined in this Act, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be punished by imprisonment for not less than 10 years, or by death if the verdict of the jury shall so direct."

(Section 4 deals with jurisdiction.)

tion (d) penalty. We hold that the statutory language points to the creation of an enhanced penalty for the basic subsection (a) offense when certain conduct is involved in committing it, rather than to the creation of a new and separate offense.

Each of the offenses defined in the added subsection (b) and (c), like subsection (a), carries its own basic penalties. They are less than the subsection (a) penalties. It would be harsh indeed to permit consecutive sentences of twenty years under the first paragraph of subsection (a), which is here involved, of twenty years under the second paragraph of subsection (a), of ten years under the first paragraph of subsection (b), of ten years under subsection (c), of twenty-five years under subsection (d), and of, say fifty years under subsection (e). Yet if these subsections all define separate offenses that can occur in the course of one bank robbery, that could be the result. A lone bank robber, armed with a loaded gun, might accost a bank manager on the street when the bank was closed, force him to accompany him to the bank (subsection (e) ), put his life in jeopardy with the gun (subsection (d) ), enter the bank with intent to commit larceny (subsection (a), second paragraph) take money under threat of the gun (subsection (a), first paragraph), walk out with over $100 (subsection (b) ), and possess, conceal, store the money (subsection (c) ). For this, if all of these are separate offenses, he could get consecutive sentences totalling 135 years or more. We do not think that Congress intended such a result. This is particularly true of subsection (d) and the pertinent part of subsection (e), which refer to conduct, occurring "in committing or in attempting to commit, any offense defined" elsewhere in the section.

Decisions of the Supreme Court, although not squarely in point here, support our views. In 1937, the statute was amended by adding to the then subsection (a) of section 2 the present second paragraph of present subsection (a), dealing with entering a bank with felonious intent, and the present subsection (b), dealing with taking money or property from a bank (Act of August 24, 1937, ch. 747, 50 Stat. 749.) In Prince v. United States, 1957, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, Prince had entered a bank, pulled a gun, and committed a robbery. He was indicted on two counts. One charged robbing a bank in violation of what are now the first paragraph of subsection (a) and subsection (d). The other charged entering the bank with intent to commit a felony in violation of the present second paragraph of subsection (a). Convicted on both counts, Prince was given consecutive sentences. His motion under Rule 35, F.R.Crim.P. to correct sentence was denied. The Supreme Court reversed. It reviewed the history of the Act and concluded that there was "no indication that Congress intended also to pyramid the penalties." (at 327, 77 S.Ct. at 406.) It held that the entry merged into the robbery, so that there was but one offense (at 328, 77 S.Ct. 403).

What the Court said about subsection (d) is particularly pertinent here, although it is dictum. Footnote 6, at 327, 77 S.Ct. at 406 reads:

"6. The Bank Robbery Act has, since it was passed in 1934, contained a special provision for increased punishment for aggravated offenses. One who, in committing robbery, assaults any person or puts the life of any person in jeopardy by the use of a dangerous weapon can be sentenced to 25 years in jail or fined $10,000 or both. When the Act was amended in 1937 to add larceny and unlawful entry, these were incorporated in the same paragraph with robbery and thus made subject to the increased penalty under aggravating circumstances. This provision currently is found in 18 U.S.C. § 2113(d)."

And in footnote 11, the Court points out that Prince was convicted of "robbery aggravated by assault with a deadly weapon" and thus subject to the subsec-

tion (d) penalty (at 329). We think that the Court's characterization of subsection (d) is equally applicable to the portion of subsection (e) that is here involved.

In 1940, the Act was amended by inserting subsection (c), which makes it an offense to "receive, possess, conceal, store, barter, sell or dispose of property . . . taken from a bank in violation of subsection (a)." Act of June 29, 1940, ch. 455, 54 Stat. 695. In Heflin v. United States, 1959, 358 U.S. 415, 79 S. Ct. 451, 3 L.Ed.2d 407. Heflin had been convicted of robbery in violation (count one) of subsections (a) and (d), (count two) of subsection (c), (count three) conspiracy. He was given three consecutive sentences. His motion under 28 U.S.C. § 2255, in which he claimed that he could not have been convicted under both of the first two counts was denied in the lower courts. The Supreme Court reversed, citing *Prince*. The Court said, after reviewing the "meagre" legislative history:

"From these Reports it seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber. We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery. It may be true that in logic those who divide up the loot following a robbery receive from robbers and thus multiply the offense. But in view of the legislative history of subsection (c) we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves." (at 419–420, 79 S.Ct. at 454.)

The case is not directly in point here, but its rationale is applicable. It accords with the principle announced in Bell v. United States, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, where the Court said:

"It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." (at 83–84, 75 S.Ct. at 622.)[3]

In accord is United States v. Canty, 1972, 152 U.S.App.D.C. 103, 469 F.2d 114, in which the defendant was indicted, convicted and sentenced on four counts of bank robbery under the first paragraph of subsection (a), one for each of the four bank tellers that he robbed. The court held that the defendant had committed only one offense:

"Although there seem to be no cases precisely on point, we cannot agree with the Government's position that the robbery of each teller constitutes a separate 'taking' within the meaning of the statute. While it may be true that under general theft and robbery statutes, a defendant may be punished under separate counts for taking money from different people in the same transaction, the statute here is not for theft or robbery against the person generally. The crime is *bank* robbery, and the statute is entitled 'Bank Robbery and Incidental Crimes.' There is no doubt here that only one transaction took place and that only one bank was robbed." (at 126–127; emphasis in original.)

In so holding, the court cited and relied upon *Bell, supra.*

3. See also United States v. Clements, 9 Cir., 1972, 471 F.2d 1253, in which we applied the same principle in construing the National Firearms Act, 26 U.S.C. § 5861(c), (d) and (f).

There are two other Supreme Court decisions which refer to the question whether subsection (d) creates a separate offense or merely provides for aggravated punishment of a single offense. In Holiday v. Johnston, 1941, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392, the government conceded that subsections (a) and (d) do "not create separate crimes but prescribe[s] alternative sentences for the same crime depending on the manner of its perpetration" (at 349, 61 S.Ct. at 1017). The Court, however, did not decide the question. In Green v. United States, 1961, 365 U.S. 301, 81 S. Ct. 653, 5 L.Ed.2d 670, the government made the same concession (at 305, 81 S. Ct. 653). Again, however, the Court did not decide the question.

We now turn to the decisions of the courts of appeals, and first, to those dealing with subsection (d). In doing so, we are aware that, in the present case, subsection (d) was treated as creating only aggravated punishment, rather than a separate offense. We consider the cases dealing with subsection (d) only because its language is the same as that of the portion of subsection (e) that applies here.

We have repeatedly held or said that subsection (d) does not create a separate offense, that violation of it merely enhances the penalty. United States v. Parson, 9 Cir., 1971, 452 F.2d 1007. Separate counts under subsections (a) and (d), concurrent sentences. Held, the subsection (a) offense merged into the subsection (d) offense. Vacated and remanded for sentencing under the subsection (d) count alone. United States v. Paszek, 9 Cir., 1970, 432 F.2d 780. Both subsections (a) and (d) charged in one count. Held, conviction as aider and abettor of lesser included offense, subsection (a) only, is valid, although the principal was convicted under (a) and (d). Lynch v. United States, 9 Cir., 1966, 364 F.2d 313. Subsections (a) and (d) charged in one count, as in the present case. Bayless v. United States, 9 Cir., 1965, 347 F.2d 354. Separate counts charging violations of subsections (a) and (d). Sentence twenty years under (a), twenty-five years under (d), concurrent. Held, sentence under (a) vacated—the conviction under (a) merged into that under (d). Sentence under (d) left standing. Crum v. United States, 9 Cir., 1945, 151 F.2d 510. Separate counts under subsections (a), (d) and (e), former 12 U.S.C. §§ 588b(a) and (b) and 588c. Sentences: twenty years under (a), twenty-five years under (d), twenty-five years under (e), concurrent. Held, sentence under (a) invalid—that offense merged into the (d) offense; sentences under (d) and (e) are valid. Barkdoll v. United States, 9 Cir., 1945, 147 F.2d 617. Same charges as in *Crum, supra;* same conclusion, but the subsection (a) and (d) sentences were concurrent with a life sentence under subsection (e). None of the sentences was vacated. Wilson v. United States, 9 Cir., 1944, 145 F. 2d 734. One count under subsection (a), another under (d), (former (b)). Sentences consecutive. Held, only one offense charged; sentence under (a) is invalid; sentence under (d) is invalid because less than minimum under that subsection. Judgment under (a) vacated; remanded for resentencing under (d). Dimenza v. Johnston, 9 Cir., 1942, 130 F.2d 465, rehearing denied, 1942, 131 F.2d 47. One count under subsection (a) and three separate counts under (d) (former (b) ), each relating to jeopardizing a different person in committing the subsection (a) robbery. Four sentences, consecutive. Held, there was but one offense, and only one sentence, under (d), is valid. Defendant ordered released because he had served the one valid sentence. In denying the government's petition for a rehearing we said:

"If the lives of a dozen persons were imperiled the fact that the draftsman chose to name each individual in a separate count rather than to include them all in one count, as was done in Hewitt v. United States, 8 Cir., 110 F.2d 1, 6, did not constitute each count a separate and distinct bank robbery, although, if the offense

charged had been that of an assault upon the individual, it would do so." (131 F.2d at 48.)

A recent decision of this court, however, is directly contrary to *Dimenza, supra.* In Clermont v. United States, 9 Cir., 1970, 432 F.2d 1215, the charges were: count three, subsection (a); count four, subsection (b); count five, subsections (a), (b) and (d), assault on one Hamer; count six, subsections (a), (b) and (d), assault on one Oehler; count seven, subsections (b) and (c). There were separate but concurrent sentences on each count. Held, counts three, four, and seven are merged into the convictions under counts five and six, but the sentences under counts five and six are valid because they charge assaults on different persons. Sentences on counts three, four and seven set aside; affirmed as to counts five and six.[4] *Dimenza* was not cited. In light of our earlier decisions, *Clermont* appears to be an aberration. It is arguable, in view of the concurrent sentence doctrine, *see* Benton v. Maryland, 1969, 395 U.S. 784, 788–790, 90 S.Ct. 2056, 23 L.Ed.2d 707; United States v. Moore, 9 Cir., 1971, 452 F.2d 576, that the statement that the convictions under both counts five and six are valid was unnecessary to the decision and is dictum.

Every other circuit that has considered the relationship of subsection (d) to subsections (a) and (b) has come to the same conclusion that we have reached; subsection (d) does not create a separate offense; it merely provides, under the defined circumstances, for an enhanced penalty for violating subsections (a) or (b).[5]

We now turn to cases dealing with subsection (e). At the outset, we note that subsection (e) differs from subsection (d) in an important respect. Subsection (d) refers only to "Whoever, in committing, or attempting to commit, any offense defined in subsection (a) and (b). . . ." Subsection (e), on the other hand, deals with three separate circumstances, stated in the disjunctive, which, for clarity, we number in brackets: "Whoever [1] in committing any offense defined in this section, [2] *or* in avoiding or attempting to avoid apprehension for the commission of such offense, [3] *or* in freeing himself or attempting to free himself from arrest or confinement for such offense. . . ." (Emphasis added.) In this case we deal only with type [1] circumstances. Neither type [2] nor type [3] circumstances are charged in the indictment. We leave to another time the question whether type [2] and [3] circumstances create separate offenses. It is certainly arguable that they do; *see* cases cited *infra.*

Two of our decisions, Crum v. United States, *supra,* and Barkdoll v. United States, *supra,* involve type [1] circumstances under subsection (e), then 12 U.S.C. § 588c, as well as subsections (a) and (d), then 12 U.S.C. § 588b(a) and (b). The cases arose from the same in-

---

4. In United States v. Tyler, 9 Cir., 1972, 466 F.2d 920, cert. denied, 409 U.S. 1045, 93 S. Ct. 544, 34 L.Ed.2d 497 (1972), we held, in a two to one decision, that subsections (b) and (c), insofar as subsection (c) involves possession, create separate offenses, for which a defendant may be separately charged and convicted, even though the events involved occurred in one transaction. An alternative ground, as to which we were unanimous for affirmance, was the concurrent sentence doctrine. The present case does not raise the question of the relationship between subsections (b) and (c), and we express no opinion as to whether *Tyler* was correctly decided, even though the writer of this opinion, who dissented in *Tyler,* obviously thinks that the decision in *Tyler* was wrong.

5. *See, e. g.,* O'Clair v. United States, 1 Cir., 1972, 470 F.2d 1199; United States v. Tomaiolo, 2 Cir., 1957, 249 F.2d 683; United States v. Welty, 3 Cir., 1970, 426 F.2d 615; Walters v. Harris, 4 Cir., 1972, 460 F.2d 988, 994; United States v. White, 5 Cir., 1971, 440 F.2d 978; Coy v. United States, 6 Cir., 1946, 156 F.2d 293; United States v. Trumblay, 7 Cir., 1961, 286 F.2d 918; Hewitt v. United States, 8 Cir., 1940, 110 F.2d 1, 10–11; Holbrook v. Hunter, 10 Cir., 1945, 149 F.2d 230. *But see* Gebhart v. Hunter, 10 Cir., 1950, 184 F.2d 644; McDonald v. Hudspeth, 10 Cir., 1942, 129 F.2d 196.

dictment. In each case, we hold that the subsection (e) count charged a separate offense, but with no discussion or citation of authority. In both cases, the sentences under the (a) and (d) counts were concurrent with that under the (e) count. In *Crum*, the sentences were equal; in *Barkdoll*, however, the sentences under the (a) and (d) counts were twenty-five years, while that under the (e) count was for life. The result, however, would have been the same if we had held, in line with our subsection (d) cases, that there was but one offense, the lesser subsection (a) and (d) offenses being merged into the subsection (e) offense. It is clear from the *Barkdoll* opinion that the subsection (e) count charged only type [1] circumstances and not type [2] or type [3] circumstances. However, we cannot tell whether the person kidnapped (the (e) count) is the same person as the person assaulted (the (d) count). In the case now before us, the two persons are different, thus perhaps bringing into play our decision in *Clermont, supra*. Compare, however, *Dimenza, supra*.

There are comparatively few decisions of other circuits dealing with whether subsection (e) defines a separate offense. Those that deal with type [1] circumstances, i.e., conduct "in committing any offense defined in this section," hold that subsection (e) does not create a separate offense. *United States v. Drake*, 7 Cir., 1957, 250 F.2d 216; *Jones v. United States*, 8 Cir., 1968, 396 F.2d 66. There are no contrary decisions, other than our own, involving type circumstances.

When it comes to circumstances of types [2] and [3], the authorities are in conflict. The following cases hold that such circumstances do not give rise to a separate offense; *Sullivan v. United States*, 5 Cir., 1973, 485 F.2d 1352 type [2] circumstances; *Forrester v. United States*, 5 Cir., 1972, 456 F.2d 905, type [2] circumstances; *Simunov v. United States*, 6 Cir., 1947, 162 F.2d 314, type [2] circumstances. The following cases hold that subsection (e) creates a sepa-

rate offense as to type [2] or type [3] circumstances: *United States v. Parker*, 7 Cir., 1960, 283 F.2d 862, type [3] circumstances; *Clark v. United States*, 10 Cir., 1950, 184 F.2d 952; *Clark v. United States*, 10 Cir., 1960, 281 F.2d 230, type [2] circumstances; *Ward v. United States*, 10 Cir., 1950, 183 F.2d 270, type [2] circumstances; *Gilmore v. United States*, 10 Cir., 1942, 124 F.2d 537, type [3] circumstances. *See also Casebeer v. United States*, 10 Cir., 1937, 87 F.2d 668, involving both type [1] and type [2] circumstances.

We conclude that, like subsection (d), subsection (e), insofar as it relates to type [1] circumstances, does not create a separate offense, but only provides for enhanced punishment for the offense elsewhere defined in § 2113. If the jury finds a violation of subsection (a), (d) and (e), type [1] circumstances, as it did here, there is but one offense, even though different persons may have been the victims of the subsection (d) conduct and the subsection (e) conduct under type [1] circumstances. The subsection (d) and subsection (e) type [1] circumstances charges are both aggravations of the subsection (a) offense. The proper way to charge subsection (d) conduct and subsection (e) conduct under type [1] circumstances is in a single count, as was done with subsection (a) and subsection (d) conduct in this case. Because the jury in this case found Faleafine guilty of violating subsections (d) and (e), type [1] circumstances, it is subsection (e) that fixes the applicable penalty. Faleafine attacks only his sentence. He can only be sentenced under subsection (e). The sentence under count one is invalid. The sentence under count two is valid. We find no basis for holding that the sentence amounts to cruel and unusual punishment. We leave to another day the question whether subsection (e) conduct under type [2] or type [3] circumstances is a separate offense. Insofar as our decisions in *Crum v. United States*, 9 Cir., 1945, 151 F.2d 510; *Barkdoll v. United States*, 9 Cir., 1945, 147

F.2d 617, and Clermont v. United States, 9 Cir., 1970, 432 F.2d 1215, are inconsistent with this opinion, they are overruled.

The judgment of conviction under count one is reversed, with directions to vacate the sentence under that count. The judgment of conviction under count two is affirmed.