**UNITED STATES of America, Plaintiff,**

**v.**

**Eduardo Palayo SANCHEZ, Defendant.**

**No. CR 91–906 AWT.**

United States District Court,
C.D. California.

Jan. 3, 1992.

Lourdes G. Baird, U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Chief, Crim. Appeals Mark D. Larsen, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff.

Peter M. Horstman, Federal Public Defender, Gerald C. Salseda, Deputy Federal Public Defender, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

TASHIMA, District Judge.

Defendant Eduardo Palayo Sanchez is charged in a single count indictment with bank robbery and use of a dangerous weapon and kidnapping in committing the robbery, in violation of 18 U.S.C. § 2113(a), (d) and (e). He pleaded guilty to the (a) and (d) charges, but pleaded not guilty to the subsection (e) charge of kidnapping. Trial by jury has been waived and the matter has been tried to the court.

### FACTS

The facts in this case are simple and are largely undisputed. They are fairly summarized in the government's trial brief, as follows:[1]

On October 16, 1991, at approximately 12:40 p.m., California Federal Bank employee [Silva] Serafian noticed defendant Eduardo Palayo Sanchez ("Defendant") walk into that bank ... Defendant then ... walked ... to Ms. Serafian's desk. Ms. Serafian turned to ask Defendant if she could help him. Defendant pulled a long butcher knife from behind his body, grabbed Ms. Serafian from behind as she sat at her desk, placed the knife near her throat and demanded money.

Patrick Harris, the bank's Personal Banking Representative, was returning from lunch as he looked through the bank's lobby area and saw Defendant standing behind Ms. Serafian with the knife to her throat. Mr. Harris approached Ms. Serafian's desk and asked Defendant what he wanted. Defendant demanded money and threw a blue/green pillowcase to the ground. Mr. Harris took the pillowcase to teller win-

---

1. The summary which follows is a slightly edited version of the "Statement of Facts" portion of the Government's Trial Memorandum, filed Dec. 26, 1991. To the extent that the evidence adduced at trial differs from the summary, the trial evidence is enclosed in brackets.

dows occupied by Elsa Marquez and Luis Calderon, who gave cash to Harris as Defendant yelled "I'm giving you ten seconds. Hurry up." ... Harris put the money in the pillowcase and walked back towards Defendant who still was standing behind Ms. Serafin holding the knife to her throat.

Defendant refused the pillowcase, demanded more money, told Mr. Harris that he had ten [seconds] and began counting [backwards from ten] with the knife now pressing harder against Ms. Serafian's throat. Mr. Harris returned to the tellers who gave him more money which was placed in the pillowcase. Harris turned and walked towards the robber again who once more refused the pillowcase, demanding more cash. Harris went back to teller Marquez a third time who gave Harris her coins as Defendant again began counting ... with the knife to Serafian's throat ...

Mr. Harris approached Defendant a third time and told Defendant that this was all the money the bank had. Defendant directed Harris to put the pillowcase on a desk positioned toward the bank's exit door.

Defendant, remaining behind Serafian with the knife on or near her throat, forced Serafian to stand and forcibly marched her around her desk toward the exit door and the desk where the pillowcase had been left by Mr. Harris. No one in the bank moved toward Defendant or the exit door. As Defendant reached the middle of the lobby in the immediate proximity of the pillowcase, he gradually released Serafian. Defendant warned everyone in the bank not to follow him because he had [four] men outside and anyone following him would be killed. Defendant picked up the pillowcase and, with the way now clear, walked quickly out of the bank.

The distance, within the bank, over which defendant forced Ms. Serafian to accompany him, was estimated by eyewitnesses as being 15 feet, or less. The entire robbery took approximately two to three minutes. The duration of the forced accompaniment was approximately 10 seconds.

## ISSUE

Will the above facts, which the court finds, support a finding of kidnapping in aid of bank robbery under 18 U.S.C. § 2113(e)?

## THE STATUTE

The federal kidnapping in aid of bank robbery statute provides:

> Whoever, in committing any offense defined in this section [*i.e.*, bank robbery], or in avoiding or attempting to avoid apprehension for the commission of such offense, ... forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years....

18 U.S.C. § 2113(e).

## DISCUSSION

■ There are not a great many reported cases interpreting the asportation requirement of this statute. The court agrees with the government's position that this offense is similar to the federal statutory crime of kidnapping, 18 U.S.C. § 1202, and the common law. *United States v. Jones*, 678 F.2d 102, 105 (9th Cir.1982) (essential elements of subsection (e) include kidnapping in connection with the robbery); *United States v. Marx*, 485 F.2d 1179, 1186 (10th Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974) (elements under § 2113(e) "are similar to those under the common law and the federal kidnapping statute"). *Marx* further held that *some* asportation requirement had to be met.

> Although we do not feel it necessary under § 2113(e) to transport the seized person across state lines, we do feel more is required than forcing Adams [the bank president] to enter his own house or forcing the Adams family to move from the den to a bedroom.

*Id.*

The government contends that the asportation "need only be more than slight." However, the cases cited in support of this proposition paint a different picture. The

government relies first on *Government of the Virgin Islands v. Alment*, 820 F.2d 635 (3d Cir.1987). While the court there reversed the district court's vacatur of a kidnapping conviction, the facts regarding asportation were quite different from those in the case at bench. There the defendant dragged the victim by the neck from her lighted office, along an outdoor corridor and down a flight of steps, a distance of 31 feet. He then carried her another 44 feet into an area of bushes. *Id.* at 636. The Third Circuit applied its earlier announced two-prong test[2] to determine whether a kidnapping had been committed: (1) The duration of the asportation, and (2) Any significant danger to the victim independent of the underlying offense. *Id.* at 637. In our case, the duration of the asportation, 10 seconds, could hardly be any more minimal. No doubt there was significant danger to the victim teller by the presence of the knife, but that danger was present by virtue of the § 2113(d) offense, assault by the use of a dangerous weapon, and not by reason of any trivial movement over a distance of 15 feet.

The government also relies on *People v. Stender*, 47 Cal.App.3d 413, 422, 121 Cal. Rptr. 334 (1975). But there, the victim was forced out of her home, past three houses, over a seawall and across a beach to underneath a pier, a distance of approximately 200 feet. The court characterized the asportation as "substantial in character" and not trivial. *Id.* The California cases involving both "simple" kidnapping, under Cal.Pen.Code § 207, and "aggravated" kidnapping, under Cal.Pen.Code § 209, are consistently of the same view. Movements which are trivial or merely incidental to other crimes do not constitute kidnapping. *People v. Stanworth*, 11 Cal.3d 588, 600, 114 Cal.Rptr. 250, 522 P.2d 1058 (1974); *People v. Daniels*, 71 Cal.2d 1119, 1139, 80 Cal.Rptr. 897, 459 P.2d 225 (1969); *Cotton v. Superior Court*, 56 Cal.2d 459, 465, 15 Cal.Rptr. 65, 364 P.2d 241 (1961). Recently, the California Supreme Court again confirmed that asportation which takes place entirely within the home (from adjoining garage to house, through hall, kitchen, dining room and den) does not amount to kidnapping. *People v. Sheldon*, 48 Cal.3d 935, 952–53, 258 Cal.Rptr. 242, 771 P.2d 1330 (1989).

Thirty years ago, The American Law Institute addressed the very problem now confronting the court:

> The central problem in the law of kidnapping is to restrict the drastic sanctions authorized for this offense to instances of misbehavior warranting such punishment ...

> .    .    .    .    .

> The ... potential danger which a rational penal code must avoid is that the definition of kidnapping will sweep within its scope conduct that is decidely [sic.] wrongful but that should be punished as some other crime. Thus, for example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnapping as well as robbery ... Definition of kidnapping to exclude such cases is a task of special subtlety for, unless particular care is taken, trivial aspects of robbery, rape or some other crime will end up classified as the most serious version of kidnapping.

> The concerns expressed here are not merely hypothetical. Experience reveals numerous instances of abusive prosecution under expansive kidnapping statutes for conduct that a rational and mature penal law would have treated as another crime.

MODEL PENAL CODE § 212.1 comment (Official Draft and Revised Comments 1962).

To be sure, we are not engaged in drafting a statute. However, § 2113(e) does not tell us, on its face, what its asportation requirement is. And the legislative history tells us little more about this element of the crime. *See Marx*, 485 F.2d at 1186. Thus, consideration of the learned commen-

---

**2.** The test was announced in *Government of the Virgin Islands v. Ventura*, 775 F.2d 92, 98 (3d Cir.1985).

tary on what a kidnapping statute should and should not accomplish is helpful in interpreting an ambiguous statute.

## CONCLUSION

Kidnapping under § 2113(e) requires asportation of the victim that is not insubstantial. The substantiality of the asportation, although there can be no bright line,[3] should be measured by duration, distance and any change in environment tending to increase the danger to which the victim is exposed, other than any danger inherent in the underlying offense.[4]

Measured by any standard or from any aspect, the forced accompaniment or asportation in this case was not substantial. The court finds and concludes that defendant is not guilty of the § 2113(e) offense of forcing victim teller Silva Serafian to accompany him without her consent.

IT IS SO ORDERED.

---

3. *See Sheldon,* 48 Cal.3d at 953, 258 Cal.Rptr. 242, 771 P.2d 1330.

4. As is true in the case at bench, the underlying crime can include assault by the use of a dangerous weapon under § 2113(d), as well as bank robbery under § 2113(a).