**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

PATRICK THOMAS STROBEHN, JR.,
            *Defendant-Appellant.*

No. 04-50167

D.C. No.
CR-03-00712-SJO

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
June 9, 2005—Pasadena, California

Filed August 31, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Rymer;
Dissent by Judge B. Fletcher

11955

## COUNSEL

Marilyn E. Bednarski, Kaye McLane & Bednarski, Pasadena, California, for the defendant-appellant.

Antoine Raphael, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

RYMER, Circuit Judge:

After Patrick Strobehn, Jr. arrived at the San Dimas branch of Washington Mutual Bank with a shotgun, he approached Victory Le, a security guard, from the rear. The guard was patrolling in front of the bank near the parking lot. Strobehn ordered Le to turn around, walk toward the bank, open the door, go inside, and lie face down on the floor. Within 45 seconds, Strobehn had robbed the bank of $8,144. Thanks to a tip from a (former) friend, Strobehn was eventually apprehended and charged with armed bank robbery with forced accompaniment in violation of 18 U.S.C. §§ 2113(a), (d) and (e), and with use of a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c). He was convicted and now contends that the evidence was insufficient to prove the forced accompaniment charge under § 2113(e) because the asportation was insubstantial. We conclude that Strobehn forced accompaniment without consent, which is what § 2113(e) requires. As we see no abuse of discretion in the evidentiary rulings about which Strobehn also complains, we affirm.

I

Section 2113(e) applies to bank robberies and provides for enhanced punishment for aggravated conduct, as follows:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

**[1]** Strobehn maintains that forced accompaniment should not have been submitted to the jury in light of evidence that the security guard was moved for only a few seconds, over a matter of feet, and without increasing the danger already inherent in an armed bank robbery. What proves a forced accompaniment is an issue on which we have not yet directly spoken.

**[2]** We have dubbed subsection (e) a "killing" and "kidnaping" enhancement, *see, e.g.*, *United States v. Jones*, 678 F.2d 102, 103, 104 (9th Cir. 1982); *United States v. Faleafine*, 492 F.2d 18, 20 (9th Cir. 1974) (en banc), but of course the statute does not literally incorporate the elements of a kidnaping offense. On its face, the enhancing elements are that a defendant (1) in the course of committing a bank robbery (2) forces a person (3) to accompany him (4) without that person's consent. While "kidnaping" works as a shorthand description because § 2113(e) contemplates moving someone by force to someplace he doesn't want to go, the statute plainly, and only, requires accompaniment that is forced and without consent.

**[3]** Strobehn urges us to embrace a substantiality requirement measured by the duration and distance of the asportation and whether it changes the environment beyond what is routine for a bank robbery. The statute has no such qualifying language. Nevertheless, Strobehn relies on two cases that did adopt a substantiality analysis: *United States v. Marx*, 485 F.2d 1179 (10th Cir. 1973), where the court felt that more is required than forcing a bank manager to enter his own home or forcing his family to move from one room to another, and *United States v. Sanchez*, 782 F. Supp. 94 (C.D. Cal. 1992) (Tashima, J.), in which the court in a bench trial acquitted a defendant who took a bank employee hostage at knifepoint and forced her to walk with him inside the bank for 15 feet for less than 10 seconds. Since then, a number of circuit courts of appeals have reviewed § 2113(e) convictions, and they have uniformly upheld convictions where the asportation met the statute's unadorned requirements.

In *United States v. Bauer*, 956 F.2d 239, 241 (11th Cir. 1992), the court upheld the conviction of a bank robber who forced two people at gunpoint to accompany him from the back to the front of the bank and one of them to exit the bank with his gun, rejecting an argument similar to that which Strobehn advances here — that the statute requires that "hostages traverse a particular number of feet, that the hostages be held against their will for a particular time period, or that the hostages be placed in a certain quantum of danger." In *United States v. Reed*, 26 F.3d 523 (5th Cir. 1994), the court upheld the conviction of a bank robber who accosted a bank employee as she was about to open the bank for the day, forced her at gunpoint to unlock the door, enter the bank, turn off the alarm, go to the vault, put money into his bag, and lie face down where he bound her hands and feet. *Reed* also rejected a "substantiality" argument, holding that it was sufficient that the defendant forced the employee to enter the bank from the outside. In *United States v. Davis*, 48 F.3d 277 (7th Cir. 1995), the robber also accosted an employee as she was unlocking the credit union in the morning, and forced her at gunpoint to enter the facility, deactivate the alarm, turn on the lights, get her keys to the vault, and get money. The court refused to accept a challenge similar to Strobehn's, explaining:

> Davis ignores the critical fact supporting his conviction on this count: that he forced Woodman [the credit union employee], at gunpoint, to go from the parking lot into the credit union. Clearly, the phrase 'forces any persons [sic] to accompany him without . . . consent' encompasses forcing someone outside a building to enter the building. There is nothing in the text of the statute that requires that the elements of a federal kidnapping or any other crime be satisfied. The statute simply requires what it says: forced accompaniment without consent. It is an apt description for what Davis compelled Woodman to do.

*Id.* at 279. Most recently, in *United States v. Turner*, 389 F.3d 111 (4th Cir. 2004), the court found evidence that the bank robber forced the bank manager to accompany him to the vault and put money into a pillowcase sufficient to uphold a § 2113(e) conviction.

**[4]** We align ourselves with the weight of circuit authority and uphold Strobehn's conviction. He forced Le at gunpoint to go from his post outside the bank, open the door, and lie face down on the floor inside the bank while Strobehn got money from the tellers and escaped. This evidence suffices for a jury to find beyond a reasonable doubt that Strobehn forced Le to accompany him without Le's consent while Strobehn was committing a bank robbery.[1] *See Faleafine*, 492 F.2d at 21 (noting as example of conduct running afoul of § 2113(e) an armed bank robber accosting a bank manager on the street when the bank was closed and forcing the manager to accompany him to the bank).

## II

On the day of the robbery, Strobehn left seven pages (consisting of five sheets of paper, two of which had writing on both sides) on the kitchen table of the apartment that he shared with his wife, Kimberly, and their children. On the first page Strobehn wrote "Kimberly, honey, I hope to God you never get to read this letter," and there followed a note that continued over to the opposite side of the paper, where about a third of the way down a line was drawn across the page. His last words before the line were "just a second —"

---

[1]We do not decide whether less substantial movement would suffice in a different case. Contrary to the dissent's understanding, we do not hold that "§ 2113(e) 'plainly' applies to *any* forced accompaniment, no matter how slight." Dissent, at 11966. Rather, we hold only that Strobehn's actions in accosting Le at gunpoint in the bank parking lot, forcing Le to walk a non-trivial distance from the parking lot to the interior of the bank, and then forcing him to lie face down inside the bank, satisfy the requirements for application of the § 2113(e) enhancement.

and after the line he wrote: "To Debbie, Larry, & Naomi," followed by a few lines addressed to them taking up another third of the page, ending with "Love ya," then another line across the page, after which he wrote: "To Marc, Christy, & Nicole, & Krystal" followed by a message to them that spilled over to the next page and concluded with "Love ya." Following that message, about two-thirds of the way down the third page, Strobehn drew another line across the paper after which he wrote: "To mom, dad, & (Noella & family)." This message concluded with "I love you all." On the top of the opposite side of this page Strobehn wrote: "To Mike, Sasha, & Lisa," and about half way down, drew a line after which he wrote: "Grandma Peggy, Lots of love 4 U. Your too sweet," then drew another line, after which he wrote: "Okay, honey (Kimberly) I'm back . . . ." The next page starts with "And I say hi, to Mikie, Sean, Joanne, & to Big Marc, & of course Annette, . . . Sally, Eric, & Manuel. And Kerri." The sixth page starts with "To the family I love, —" and the seventh, "It's been *great* to be your husband," signed "Your husband *forever*, Patrick."

Strobehn moved to exclude this evidence as privileged, but the district court found that the note was not intended to be a confidential marital communication because only limited portions (page 1 and part of page 2, part of page 4, and page 5) are addressed to Strobehn's wife and the rest is expressly directed to third parties. Strobehn argues that the district court's ruling relied too heavily on the formatting and addressing of the note, and ignored other facts that showed that Strobehn intended the note to be confidential. We disagree.

[5] The marital communications privilege protects statements or actions that are intended as a communication by one spouse to the other, that are made during the existence of a valid marriage, and that are intended as confidential by the spouse who makes the communication. *United States v. Marashi*, 913 F.2d 724, 729-30 (9th Cir. 1990) (so holding,

but indicating that the privilege is narrowly construed in criminal cases because it impedes the search for truth). Federal common law assumes that private communications between spouses are intended to be confidential, and thus privileged. *Wolfle v. United States*, 291 U.S. 7, 14 (1934). For this reason, the government bears the burden of showing that the communication was not intended to be confidential. *Blau v. United States*, 340 U.S. 332, 333 (1951); *Marashi*, 913 F.2d at 730.

[6] Here, Strobehn's note was discontinuous, sequentially addressed to twenty-four people, with his opening one-and-one-third-page message to his wife immediately giving way on the same page to two messages addressed to separate groups of other people. Even if he assumed that his wife would have no reason to pass the messages on if he survived, as written the compilation was manifestly intended to be communicated to all twenty-four individuals to whom it was addressed. Therefore, the district court did not err in concluding that the marital communications privilege does not apply. *See United States v. Duran*, 884 F. Supp. 537, 539, 540-41, 543 (D.D.C. 1995).

III

[7] Bank photographs showed the robber carrying a gun. Strobehn's wife said it looked like a shotgun Strobehn owned and that she had fired a couple of times in Kansas, where they used to live. Over objection, the district court allowed FBI Special Agent James Elliott to testify that, based on the surveillance pictures, the gun used by the robber was an NEF SB-1021 20 gauge shotgun, the same type of gun that Strobehn owned. Strobehn contends that this was error because the jury was capable of determining whether the rifle carried by the robber had the same features as the type of rifle that Strobehn owned. If this is correct, Strobehn submits, *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993), indi-

cates that allowing expert opinion on the issue is impermissible under Federal Rule of Evidence 702.

*LaPierre* is distinguishable. It involved lay testimony used to compare the person in bank surveillance photographs with the defendant. As we explained, the jury is able to look at the surveillance photographs of *the robber* and at *the defendant* and make an independent determination of whether the individual in the photographs is in fact the defendant. 998 F.2d at 1465. The characteristics of *a gun* are quite different. Elliott compared specific features of the gun in the surveillance photographs with the same features of the gun that Strobehn owned — the external hammer, round trigger guard, narrowing in the foregrip, thickness of the barrel in relation to the foregrip, and the Monte Carlo stock comb — and based on his knowledge and experience with guns of this sort, concluded that these characteristics of the gun in the surveillance photographs and the gun owned by Strobehn were the same. He also testified that although some of these features are also similar to other guns, the questioned gun was not similar in all these respects to any other gun but Strobehn's. It is unlikely that anyone not experienced in handling and using firearms would know what features to look at, or how to compare them. Accordingly, the district court was well within its discretion in finding that Elliot's testimony would assist the jury in understanding the evidence. *See United States v. Brown*, 501 F.2d 146, 150 (9th Cir. 1974), *rev'd on other grounds sub nom. United States v. Nobles*, 422 U.S. 225 (1975) (noting that jurors may "utterly lack experience to distinguish or recognize certain objects such as firearms").

As we see no error at all, we need not reach Strobehn's argument that reversal is required for cumulative error.

AFFIRMED.

B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent from the denial of Strobehn's insufficient evidence claim. Section 2113(e) increases the minimum penalty for bank robbery from no minimum to ten years imprisonment for certain aggravating conduct — killing or forced accompaniment without consent. The question here is what conduct qualifies as forced accompaniment under § 2113(e) and thereby subjects the defendant to the significantly harsher minimum penalty that the provision mandates. There is little direct authority in the Ninth Circuit. However, the first circuit to address this question, the Tenth Circuit, held that Congress intended for § 2113(e)'s significant sentence enhancement to apply only to bank robbers who engaged in significantly aggravating conduct — as opposed to *any* forced accompaniment regardless of substantiality or culpability. *United States v. Marx*, 485 F.2d 1179, 1186 (10th Cir. 1973). In addition, Judge Tashima, while a district court judge, decided *United States v. Sanchez*, 782 F.Supp. 94 (C.D. Cal. 1992) (Tashima, J.). He concluded that "kidnapping under § 2113(e) requires asportation of the victim that is not insubstantial" and held that forcibly moving a bank teller from behind her desk toward the bank's exit did not suffice. *Id.* at 97. Similarly, I conclude that moving a guard to a place where he can be watched while one robs a bank is so integral a part of the underlying crime that it should not be used for enhancement.

A review of cases discussing § 2113(e) suggests that courts long understood the forced accompaniment clause of § 2113(e) to encompass only aggravating conduct akin to kidnapping or hostage-taking. *See, e.g.*, *Clark v. United States*, 281 F.2d 230, 232-33 (10th Cir. 1960) ("The kidnapping statute, Subsection 2113 (e) . . . was undoubtedly designed to provide a more severe penalty . . . for the bank robber who kidnaps to avoid apprehension for the commission of the offense of robbery . . . ." ); *Marx*, 485 F.2d at 1186 ("concluding § 2113(e) incorporates elements of kidnapping

"similar to those under the common law and the federal kidnapping statute"); *United States v. McGhee*, 488 F.2d 781, 785 (5th Cir. 1974) (noting that the necessary elements of a § 2113(e) offense are "(1) the taking of a hostage (2) in the course of committing some other § 2113 offense"); *United States v. Jones*, 678 F.2d 102, 105 (9th Cir. 1982) ("The 'essential elements' of subsection (e) are the commission of a robbery and the killing or kidnapping in connection with it.").

The majority dismisses these numerous references to § 2113(e) as the "killing and kidnapping" statute, asserting that the courts have simply used terms such as "kidnapping" and "taking of a hostage" as short hand for forced accompaniment and implying that § 2113(e) "plainly" applies to *any* forced accompaniment, no matter how slight.[1] However, the "killing and kidnapping" label is not mere judicial shorthand: subsection (e) was originally codified as 12 U.S.C. § 588c and entitled, "killing or kidnapping as incident to robbery." 12 U.S.C. § 588c (1940); *see also Barkdoll v. United States*, 147 F.2d 617 (9th Cir. 1945) (quoting 12 U.S.C. § 588c); S.Rep.No.537, 73d Cong. 2d Sess. (1934) (using the terms "homicide or kidnaping" to describe the statute).

---

[1] I realize that the majority now notes in response to my dissent that it does not decide "whether less substantial movement would suffice in a different case." Maj. Op. at 11961 n.1. Perhaps, then, it would be more accurate for me to say that the majority suggests that § 2113(e) " 'plainly' applies to *any* forced accompaniment, *or at least that which is more than slight*." However, the "plain language" of § 2113(e) does not say "*more than slight* forced accompaniment" or "*more than de minimus* forced accompaniment" just as it does not say "*any* forced accompaniment" or "*substantial* forced accompaniment." In other words — by acknowledging that the scope of § 2113(e) must be determined, the majority proves my point: The scope of § 2113(e) is ambiguous, and we must determine whether Congress intended to reach "any," "more than *de minimus*," or "substantial" forced accompaniment. For the reasons stated herein, I am persuaded that Congress intended to reach only substantial forced accompaniment.

Moreover, the meaning of § 2113(e) is not as "plain" as the majority would have it: as Judge Tashima noted, the statute is actually silent regarding the requisite degree of forced accompaniment. *Sanchez*, 782 F.Supp. at 97-98 ("§ 2113(e) does not tell us, on its face, what its asportation requirement is."); *see also United States v. Reed*, 26 F.3d 523, 526 (5th Cir. 1994) ("Section 2113(e) does not expressly set forth how extensive the accompaniment must be to prove this aggravated form of bank robbery."). Although it may seem simpler to read the word "any" into the language of § 2113(e) and assume that the Legislature intended for the enhancement to apply to "any" forced accompaniment, "[i]t is incorrect to make assumptions on congressional intent from Congress's *silence* on the issue . . . ." *CHW West Bay v. Thompson*, 246 F.3d 1218, 1224 (9th Cir. 2001). Section 2113(e) does not state that it applies to "any" forced accompaniment more plainly than it states that it applies to "substantial" forced accompaniment. *Cf. Holloway v. United States*, 526 U.S. 1, 7 (1999) (explaining that statutory phrase, "with the intent to cause death or serious bodily harm," could describe conditional intent, unconditional intent, or both).; *see also Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (contrasting statutes that clearly indicate Congressional intent with statutes that are "silent or ambiguous" with respect to a specific issue).

The majority not only errs by creating "plain meaning" out of silence, it also errs by failing to consider § 2113(e) in context. "Just as a single word cannot be read in isolation, nor can a single provision of a statute." *Smith v. United States*, 508 U.S. 223, 233 (1993); *see also Holloway*, 526 U.S. at 7 ("As we have repeatedly stated, the meaning of statutory language, plain or not, depends on context." (internal quotation marks and citations omitted)); *United States v. Thompson*, 82 F.3d 849, 852-53 (9th Cir. 1996) (same). "Context in this regard relates to 'the design of the statute as a whole and its object and policy.' " *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (quoting *Crandon v. United States*, 494 U.S. 152,

158 (1990)); *see also United States v. Bahe*, 201 F.3d 1124, 1130 (9th Cir. 2000).

Here, consideration of "not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme," *Holloway*, 526 U.S. at 6 (internal quotation marks and citation omitted), supports the conclusion that Congress intended § 2113(e) to enhance the sentence only in cases involving substantial forced accompaniment.

First, § 2113(e) imposes the same minimum punishment for forced accompaniment without consent as it imposes for homicide, which suggests that "forced accompaniment" must refer to conduct that is comparable in degree of culpability to homicide.

Second, § 2113 creates a scale of increasingly serious crimes and corresponding increasingly severe penalties. *See generally*, 18 U.S.C. § 2113 (2005), *see also United States v. Faleafine*, 492 F.2d 18, 20 (9th Cir. 1974) ("We are of the opinion that subsection (d) . . . and subsection (e) insofar as it deals with homicide or kidnaping occurring 'in committing [bank robbery] each prescribes a more severe punishment for the substantive offense defined elsewhere in section 2113 . . . ."); *Clark*, 281 F.2d at 233 (finding that § 2113(e) was intended "to create a separate, distinct and more serious offense for which an additional and more severe penalty was authorized"). Specifically, subsections (a) and (b) of § 2113 establish the crime of bank robbery; under § 2113(a), the penalty for bank robbery by "force and violence" or "intimidation" is a fine and/or imprisonment up to twenty years.[2] Subsection (d) enhances the sentence for bank robbery aggra-

---

[2]Subsection (a) addresses bank robbery "by force and violence, or by intimidation" while subsection (b) addresses bank robbery without force. Subsection (c) establishes criminal liability for any person who "receives, possesses, conceals," etc. any thing of value obtained in the course of a bank robbery. 18 U.S.C. § 2113.

vated by assault, endangerment of a life, or use of a dangerous weapon, increasing the maximum prison sentence to twenty-five years (but leaving the minimum prison sentence at zero). Subsection (e) further enhances the sentence for bank robbery aggravated by killing or forced accompaniment, increasing the minimum prison sentence from zero to ten years, and authorizing the death penalty if death results. 18 U.S.C. § 2113 (2005).

The fact that subsection (e) prescribes a substantially more severe punishment for bank robbery than subsection (d) is evidence that Congress intended for subsection (e) to reach conduct substantially more egregious than that which is reached by subsection (d). *Cf. Thompson*, 82 F.3d at 853 (concluding that offense of using firearm equipped with silencer during and in relation to drug trafficking crime required active employment of such a firearm because "Congress could not have intended to impose a five-year penalty *only* if a drug trafficker actively employed a firearm, but mandate a 20-year sentence if that same defendant happened to own a compatible silencer that played no role in the predicate crime").

The legislative history and purpose of § 2113(e) confirms what is evident from reading the provision in context. *See Small v. United States*, 125 S.Ct. 1752, 1756-58 (2005) (construing statute based on language, context, history, and purpose). As the Tenth Circuit concluded, "the legislative history [of § 2113(e)] suggests it was enacted to combat the multitude of murders and kidnappings occurring during attempts by bank robbers to flee the scene of the crime." *Marx*, 485 F.2d at 1186.

For example, the House adopted the following description of the bank robbery statute:

> This bill provides punishment for those who rob, burglarize, or steal from [banks], or attempt to do so. A heavier penalty is imposed, if in an attempt to

commit any such offense any person is assaulted, or his life is put in jeopardy by use of a dangerous weapon. *A maximum penalty is imposed on anyone who commits a homicide or kidnaping in the course of such unlawful act.*

H.R.Rep.No.1461, 73d Cong. 2d Sess. (1934) (quoting statement of Attorney General to the Committee on the Judiciary) (emphasis added); *see also* S.Rep.No.537, 73d Cong. 2d Sess. (1934) (quoting similar language from a Department of Justice memorandum).

If any doubt remains that Congress had only substantial forced accompaniment in mind when it created the "killing and kidnapping" provision, examination of the statute's original language should eliminate it: § 2113(e) originally authorized the death penalty for bank robbery involving forced accompaniment without consent — even in cases where the forced accompaniment did not cause the death of a victim. *See* 12 U.S.C. § 588c (1940) ("Whoever, in committing any offense defined in this section . . . kills any person, or forces any person to accompany him without the consent of such person, shall be punished by imprisonment for not less than ten years, or by death if the verdict of the jury shall so direct."); *see also* H.R.Rep.No.1461, 73d Cong. 2d Sess. (1934) ( "If murder *or kidnaping* be committed in connection therewith the penalty shall be imprisonment from 10 years to life, or death if the jury shall so direct in the verdict." (emphasis added)).[3] The fact that the original version of § 2113(e) authorized the most severe penalty for bank robbery involving forced accompaniment, and essentially equated forced accompaniment with killing, confirms that Congress intended § 2113(e) to reach only forced accompaniment that signifi-

---

[3]Congress amended § 2113(e) in 1994 by striking "or punished by death if the verdict of the jury shall so direct" and inserting "or if death results shall be punished by death or life imprisonment". Pub. L. No. 103-322, 108 Stat 1796.

cantly increases the culpability of the underlying crime, *i.e.*, conduct akin to kidnapping or hostage-taking. Conversely, Congress could not have intended to authorize such a severe penalty enhancement for insubstantial asportation or forced movement inherent to the underlying crime.[4]

It is true that other circuits have construed § 2113(e) to broadly encompass *any* forced accompaniment. Maj. Op. at 11960-61 (citing *United States v. Bauer*, 956 F.2d 239 (11th Cir. 1992); *United States v. Davis*, 48 F.3d 277 (7th Cir. 1995); and *United States v. Turner*, 389 F.3d 111 (4th Cir. 2004)). However, these courts, like the majority, interpreted § 2113(e) acontextually and without the requisite inquiry into Congressional intent.

The majority also cites *United States v. Reed*, 26 F.3d 523 (5th Cir. 1994); however, it is worth noting that the *Reed* court neither found the meaning of § 2113(e) to be plain nor held that § 2113(e) applies to *any* forced accompaniment. Rather, the Fifth Circuit explained that

> [w]ithin the context of a bank robbery, there will often be movement within the bank by a bank employee — movement orchestrated by the robber. This orchestration will no doubt sometimes occur in concert with the movement of the robber himself. To conclude such circumstances are an aggravating accompaniment would likely convert numerous ordinary . . . bank robberies to aggravated bank robberies

---

[4]Even if one is not completely persuaded by the evidence that Congress intended for § 2113(e) to apply only to substantial forced accompaniment, the rule of lenity weighs in favor of the narrower construction: we must "not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)); *see also United States v. Ramirez*, 347 F.3d 792, 802 (9th Cir. 2003).

with only the faintest of distinctions between accompanied, *i.e.*, aggravated, and non-accompanied, non-aggravated bank robbers.

26 F.3d at 527-28. I agree. I part ways with the Fifth Circuit only where it holds that forced movement across a bank's threshold is per se "accompaniment" under § 2113(e).

Drawing such a bright line between movement within a bank and movement across a bank's threshold is not only arbitrary, but also risks both underbreadth and overbreadth. On the one hand, this threshold-crossing test reaches Strobehn's conduct, despite the fact that there is little meaningful distinction between forcing a security guard to move inside a bank and forcing a security guard to move 15 feet within a bank. On the other hand, the test excludes some truly aggravating conduct, such as that at issue in *United States v. Bauer*: in that case, the bank robber actually took hostages in an escape attempt, but he never left the bank with them because the police presence outside was overwhelming. 956 F.2d at 241-42.

For these reasons, Judge Tashima's approach, which weighs duration, distance, and increase in danger to the victim, makes more sense. *Sanchez*, 782 F.Supp. at 97 ("The substantiality of the asportation, although there can be no bright line, should be measured by duration, distance and any change in environment tending to increase the danger to which the victim is exposed, other than any danger inherent in the underlying offense."). This approach captures truly aggravating forced accompaniment — whether the robber crosses the bank's threshold or not — but avoids the danger of turning nearly every bank robbery that involves some movement orchestrated by the robber into the most egregious (and most harshly punished) form of aggravated bank robbery.

Under the *Sanchez* approach, the forced accompaniment committed by Strobehn is not sufficiently substantial to sup-

port a conviction under § 2113(e). Strobehn forced the guard to move inside the bank and lie down on the floor, that is, to move into a position from which he could be more easily watched. Strobehn did not take the guard hostage, use him as a shield, or threaten the guard's life in order to coerce others. Thus, the asportation was relatively short in duration and distance, and, more importantly, it did not tend to increase the danger to which the guard was exposed beyond that inherent in the underlying offense. Here, as in *Sanchez*, "there was significant danger to the victim . . . by the presence of the [weapon], but that danger was present by virtue of the [underlying] § 2113(d) offense, assault by the use of a dangerous weapon, and not by reason of any trivial movement over a distance of 15 feet." *Id*. at 96; *see also Marx*, 485 F.2d at 1186 (finding insufficient asportation where the defendants caught the bank manager victim outside his home and forced him to go inside as well as forced the victim and his family to move from room to room).

The only construction of § 2113(e) that is consistent with Congressional intent, as evinced by the statute's language, context, history, and purpose, is one that requires substantial forced accompaniment. Because Strobehn was also convicted under § 2113(d) for endangering the life of another by the use of a dangerous weapon in the course of a bank robbery, the district court was already authorized by Congress to give Strobehn a significantly enhanced prison sentence. Like forcing a teller to move to another station or a bank customer to lie down on the floor, forcing the guard to move inside and lie down on the bank floor was an integral part of the underlying crime. This forced movement did not significantly aggravate the underlying crime of armed bank robbery. Strobehn should not have been subject to the more severe penalty mandated by § 2113(e) on the basis of that conduct alone.